UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES DOYLE and ENVIRONMENTAL LAND TECHNOLOGIES LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> SALLY JEWELL et al., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DISMISSING THIRD CLAIM** <br><br> Case No.: 2:13-cv-861-CW <br><br> Judge Clark Waddoups |

This matter is before the court on the motion of Defendant Washington County to dismiss for failure to state a claim against Plaintiff James Doyle ("Doyle"). Against the County, Doyle alleges as his Second Claim unjust enrichment and as his Fourth Claim breach of the Modification Agreement with the County. The court previously denied the County's motion to dismiss those claims. [Dkt. No. 55.] The court, however, reserved ruling on the County's motion to dismiss Doyle's Third Claim for breach of the Implementation Agreement, granting the County leave to supplement its briefing based on new arguments first raised during oral argument. Having now considered the supplemental briefing, the court now GRANTS the County's motion and DISMISSES the Third Claim for Relief.

## FACTUAL BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the court assumes the well pleaded allegations of the complaint to be true and must draw all reasonable inferences in favor of the plaintiff. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997); *In re: Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103 (10th Cir. 2015). The following facts are based upon Doyle's

allegations in the Complaint.  In the early 1980's Doyle, through his wholly owned limited partnership, purchased 2,440 acres in the Washington County area.  Doyle planned to develop the land into a golf resort and other residential properties.  While Doyle was in the process of obtaining plans, permits, and infrastructure, the United States Fish and Wildlife Service in 1989, designated the Mojave desert tortoise an endangered species.  In accordance with the Endangered Species Act, the Fish and Wildlife Service listed virtually all of Washington County as critical habitat for the tortoise.  As a result, anyone in Washington County who harmed the habitat would be subject to steep and significant fines enforced by the Fish and Wildlife Service.  This caused an abrupt halt of any type of development within the County.

In 1990, the County began to apply for an Endangered Species Act section 10 Incidental Take Permit from the Fish and Wildlife Service that would allow development in the County to resume notwithstanding the listing.  In order to obtain a Take Permit, those who wish to develop critical habitat must submit a Habitat Conservation Plan demonstrating how they will minimize and mitigate harm to an endangered species.  In this case, the Conservation Plan includes a reservation for conservation in exchange for permission to develop other lands.  If the Fish and Wildlife Service deems the Conservation Plan sufficient then a Take Permit will be issued.

The Fish and Wildlife Service rejected the County's initial Conservation Plan in 1994, stating that the plan set aside insufficient land to protect the tortoise.  Under this original Conservation Plan, Doyle would have been able to develop his land.  The County later submitted a second Conservation Plan in which Doyle agreed to add his land to the reserve expecting to receive in exchange fair market compensation, either in cash or land exchanges.  This second

proposal, known as the Washington County Habitat Conservation Plan (the "Conservation Plan"), was accepted in 1996 and a Take Permit was issued to the County.

To implement the Conservation Plan and receive the Take Permit, the County, State of Utah, Town of Ivins, Bureau of Land Management (BLM), and Fish and Wildlife Service entered into an "Implementation Agreement" dated February 23, 1996. Under the agreement, the County is obligated to use its "best efforts to ensure that the private . . . lands within the Reserve are acquired." To accomplish these obligations the County imposed a special tax on lands that were subsequently developed as a result of the Take Permit. These taxes are held in a special fund for the management of the County Conservation Permit. Doyle is not a signatory or a named party to the Implementation Agreement.

To facilitate compensation for his land, in 1994, Doyle entered into a "Super Exchange Cost Sharing Agreement" with the County, whereby Doyle agreed to coordinate a massive land exchange with the BLM while the County agreed to reimburse Doyle $300,000 for his management role and expenses.

A year later, Doyle and the County executed an "Extension and Modification Agreement" that modified the Super Exchange Agreement. This contract accelerated the payments of the $300,000 and added responsibilities to both parties. Doyle was further required to perform land appraisals, engineering, surveying, and scientific studies of his land while the County agreed to reimburse Doyle for legislative legal fees and for taxes paid on his land.

As a result of the County Conservation Plan, 350,000 acres in Washington County were released for development while 61,000 acres, including Doyle's 2,440 acres, were established as the Red Cliffs Desert Reserve. Virtually all other private landowners have had their land

acquired through the County Conservation fund or Section 6 land grants. Doyle's land, on the other hand, has still not been acquired. In addition, other private land owners have had their tax liabilities forgiven while Doyle has not. The failure to compensate Doyle for his land and his taxes led to Doyle's bankruptcy in 2004 during which he was forced to partition his land to satisfy his creditors. Doyle now owns only 274 acres of his original 2,440.

In 2009, Congress created the Red Cliffs National Conservation Area. This area includes Doyle's land. Congress established that the Department of the Interior had three years to develop a comprehensive management plan for the Red Cliffs Area that would incorporate the County Conservation Plan and the Implementation Agreement. This comprehensive management plan would presumably establish funds for acquiring Doyle's land. After five years, however, the Department of the Interior has yet to release a comprehensive management plan. This failure is the basis for Doyle's claims against the United States Defendants.

In 2012, after three years had passed and Doyle realized that the Department of the Interior was not ready to release the comprehensive plan, he petitioned the local Habitat Conservation Advisory Committee to appropriate $2,500,000 from County Conservation Plan funds for the acquisition of his land. The Conservation Committee, however, rejected this proposal. Doyle's Third Claim is that County breached the Implementation Agreement by failing to use its best efforts to acquire his private lands located within the reserve for which he seeks damages.

## ANALYSIS

The County argues that Doyle's Third Claim for breach of the Implementation Agreement should be dismissed because Doyle is neither a party to the Agreement nor a third-party

beneficiary. Doyle does not allege to be a party to the Agreement, but argues that he is an intended third-party beneficiary.

The County argues that it is well established under Utah law that it must be clear from the contract that a non-party claiming the benefits of the contract must be clearly indicated as a beneficiary. "One of the most basic principles of contract law is that, as a general rule, only parties to the contract may enforce the rights and obligations created by the contract." *Wagner v. Clifton*, 2002 UT 109, ¶ 13, 62 P.3d 440 (citation omitted). "[O]nly if the written contract's clear intent is to confer rights upon a third party may that third party enforce rights and obligations of the contract." *Id.*

The County further argues that the intent to benefit a non-party must be clear from the face of the contract. "The existence of third party beneficiary status is determined by examining a written contract." *Id.* ¶ 11 (internal quotation marks and citation omitted). To be a third-party beneficiary, "[t]he written contract must show that the contracting parties clearly intended to confer a separate and distinct benefit upon the third party." *Id.* (internal quotation marks and citation omitted). Conversely, "[a]n express provision negating an intent to permit enforcement of the contract by third parties is decisive as to the rights of such parties to enforce it." 17A AM. JUR. 2D *Contracts* § 430; *see also* Restatement (Second) of Contracts § 302(1) (indicating that a third party's purported status as a beneficiary is unavailable where negated as "agreed between promisor and promisee"). "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Wagner*, 2002 UT 109, ¶ 12

(internal quotation marks and citations omitted). "Whether the contract itself is ambiguous is also a question of law." *Id.* (citation omitted).

The County argues that in this case the Implementation Agreement is clear, without any possible ambiguity, that no one other than the parties to the contract was intended as a beneficiary. Under a section entitled "Enforcement by Other Persons," the Agreement states:

> No persons who are not parties or participating Cities are intended to be deemed third Party beneficiaries under this Agreement and any benefit to anyone not a Party or participating City is incidental and not material hereto. Nothing in this Agreement is intended to create any enforcement or other rights against the County either jointly or severally by anyone not a Party, or participating city or to permit the County to be made a party to litigation which may be brought against another Party.

Implementation Agreement., at 27 (Dkt. No. 2-1). Moreover, the Agreement provides further that the parties have entered into the Agreement upon the representation that non-signatories would not have the right to enforce the Agreement.

Doyle argues initially that notwithstanding the express provisions of the Implementation Agreement that the court should recognize his right to sue based on "alternative standing," citing to a Utah Supreme Court case, *City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, 233 P.3d 461. As the County points out, however, in federal court standing must be established under Article III of the United States Constitution which requires injury in fact and a recognized legal right, citing among other authorities *Lujan v. Defenders of Wildlife,* 504 U.S. 561 (1992). Reply in Supp. Mot. to Dismiss, at 2 3 (Dkt. No. 21). Doyle cannot establish standing under Article III under a theory of alternative standing.

At oral argument, Doyle provided three additional non-Utah cases supporting the proposition that where the intent of the contract is to benefit a third-party, a court may allow the

third-party to enforce that benefit notwithstanding contract language to the contrary. If Doyle were recognized as a third-party beneficiary, he would have a recognized legal right and may meet the Article III standing requirements. In this case, Doyle alleges the Implementation Agreement expressly required the County to use its "best efforts" to acquire the private lands that would be placed in the reserve. He argues his lands were clearly intended to be acquired pursuant to this requirement, making him a clearly intended beneficiary. When Doyle agreed to place his lands in the reserve, he had the full expectation that he would be fairly compensated for the value of his lands. Among other reasons, this expectation was reasonably based upon the County's commitment to use its best efforts. Thus, he argues, he falls within the exception that the clear intent of the contract should not be frustrated by a boiler plate type provision precluding a third-party from enforcing the very purpose of the contract.

      The first case Doyle relies upon to support this argument is *Amirsaleh v. Board of Trade of N.Y., Inc.*, No. 2822-CC, 2008 WL 4182998 (Del. Ch. Sept. 11, 2008). In that case, the plaintiff held a membership interest in a stock trading exchange that merged into another exchange. The merger agreement allowed the members to elect either to receive stock in the new exchange or cash, provided a timely election was made. Plaintiff did not receive the mailing notifying him of the deadline for making the election. When he learned of the deadline and made his election, the election was ruled untimely, notwithstanding the fact that other untimely elections were accepted. Plaintiff was held to the default election of cash, which denied him greater value and trading rights on the new exchange. When the plaintiff sued seeking damages and relief, the defendant argued the plaintiff lacked standing because he was not a party to the merger agreement and could not claim to be a third-party beneficiary because the merger

agreement contained a general provision disclaiming any third-party beneficiaries.  The Chancellor rejected the argument, finding that the plaintiff was a clearly intended beneficiary of the merger agreement.  The very purpose of the merger agreement was to benefit the members by providing them with cash or stock in the new exchange.  The "promised performance [was to be] rendered directly to the beneficiary" and thus "it is presumed that the contract was for the beneficiary's benefit."  The Chancellor explained: "[A]lthough the Merger Agreement contains a general provision disclaiming the existence of any third-party beneficiaries, such disclaimer is belied by the Agreement's specific grant of the benefits to [the exchange] members."  The Chancellor ruled that the plaintiff "seeks to enforce his rights to elect the form of his consideration under the Merger Agreement  a right that is specifically and explicitly granted in the contract."  *Amirsaleh*, 2008 WL 4182998 at \*5.  Under these facts, the Chancellor found that the plaintiff had standing to proceed with a claim that the defendants had breached the implied covenant of good faith.

  Doyle also relies upon *Mea-Nea Local I v. Mount Clemens Community Schools*, No. 248794, 2004 WL 2387650 (Mich. Ct. App. Oct. 26, 2004).  In this case, the union Local sued on behalf of kindergarten teachers who the Local claimed were entitled to additional pay under a settlement between the company (Edison) that managed the academy where the teachers taught and the Community Schools of a grievance filed under the collective bargaining agreement.  The trial court granted summary judgment for the defendants concluding  that the plaintiff was not a third-party beneficiary to the management agreement between the Schools and Edison.  The plaintiff was not a party to the management agreement.  The management agreement "clearly and unambiguously repudiate[d] the establishment of any third-party beneficiary relationships."  On

appeal, the court reversed the summary judgment, finding that settlement agreement was intended to benefit the teachers represented by the Local.

> Despite the general clause disclaiming any third party beneficiary status, the substantive provisions of the management agreement clearly directly benefit plaintiff by specifically extending bargained-for benefits and other protections to union members assigned to [the academy]. Plaintiff is an intended third-party beneficiary because the management agreement expressly benefits plaintiff and contains promises on behalf of plaintiff.

*Mea-Nea Local I*, 2004 WL 2387650, at *7.

Finally, Doyle relies upon *Hadley v. Shaffer*, No. 99-144, 2003 WL 21960406 (D. Del. Aug. 12, 2003). In *Hadley,* a dispute arose over the implementation of a merger agreement under which the shareholders in a closely held corporation were to receive certain payments. Hadley, as a representative of the shareholders, filed suit in Oklahoma state court. Third-party plaintiffs removed the case to federal court, requested a change of venue to Delaware and filed a counterclaim and third-party complaint against Hadley individually. The counterclaimants relied upon a forum selection clause in the merger agreement as the basis for personal jurisdiction over Hadley in Delaware. The court determined that whether the forum selection clause could be deemed consent to personal jurisdiction turned, among other reasons, on whether Hadley was a third-party beneficiary under th merger agreement. Hadley was not a party to the merger agreement. Nevertheless, Hadley would be a third-party beneficiary if it were shown that the contract was "made for the benefit of that third party within the intent and contemplation of the contracting parties." *Hadley*, 2003 WL 21960406 at *5 (citing *Grand St. Artists v. Gen'l Elec. Co.,* 19 F. Supp. 2d 242, 253 (D.N.J. 1998) (other citations omitted)). The court held that Hadley was a third-party beneficiary and was bound by the forum selection clause. As a shareholder in

the merged corporation, the agreement was intended to directly benefit him. The court explained:

> [I]f it was not the promisee's intention to confer direct benefits upon a third party, but rather such third party happens to benefit from the performance of the promise either coincidentally or indirectly, then the third party will have no enforceable rights under the contract.

*Id.* (citing *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d 1378, 1386 (Del. Super. Ct. 1990)). Hadley was a shareholder and "undoubtedly intended [under the agreement] to receive a benefit from the sale of [his] stock through the Merger Agreement." *Id.* The court did not discuss whether the merger agreement included a provision disclaiming any third-party beneficiaries.

The principles relied upon in the three cases cited by Doyle are sound. A party who is clearly intended to directly benefit from an agreement, even though he is not a party to that agreement, should not be precluded from claiming a breach that denies him of the intended benefit. The party, however, must be a direct beneficiary of the agreement, not someone who incidentally or by happenstance simply can claim a benefit. If the intent of the contract was to directly benefit a third-party, he should not be denied that benefit because of a general disclaimer of intent to benefit third-parties when that benefit is the very object of the agreement. Utah law is not to the contrary. *See, e.g.*, *Bybee v. Abdulla*, 2008 UT 35, ¶ 36, 189 P.3d 40 ("A third party may claim a contract benefit only if the parties to the contract clearly express an intention 'to confer a separate and distinct benefit' on the third party.") (citations omitted); *SME Indus., Inc. v. Thompson Ventulett Stainback & Assocs.*, 2001 UT 54, ¶ 47, 28 P.3d 669 ("[A] party only incidentally benefitted has no right to recover under the contract.") (citations omitted)).

The determinative question on this motion is whether the parties to the Implementation Agreement affirmatively intended to directly benefit Doyle in performing the obligations under the contract, and if so, can the parties to the contract deny Doyle the right to enforce that benefit by disclaiming any intended third-party beneficiaries.  The County argues that Doyle is at best intended as an incidental beneficiary, and thus, has no right to seek to enforce the agreement.  The question must be answered by looking to the purpose of the Implementation Agreement by reviewing the Agreement itself.  *See, e.g.*, *Lilley v. Ingram*, 2013 UT App 285, 317 P.3d 470.  The Implementation Agreement expressly identifies its purpose as

  1. To assure the implementation of each of the terms of the [Conservation Plan].

  2. To specify the obligations, responsibilities and tasks assigned to each of the parties pursuant to the terms of the [Conservation Plan].

  3. To provide remedies and recourse should any Party fail to perform its obligations, responsibilities and tasks as set forth in this Agreement.

Implementation Agreement, at 10 (Dkt. No. 2-1).  One of those terms to be implemented includes "provisions for the establishment of public ownership of habitat." *Id.* at 8.  To establish this public ownership, the Agreement provides that "[a]cquisition of Reserve lands will be facilitated by the County." *Id.* at 11.  The lands are to be acquired by four methods: "(1) consolidation of lands through exchanges, (2) purchase of lands by Land and Water Conservation Fund (L&WCF), (3) purchase of conservation easements, and (4) donations." *Id.* at 11.  Moreover, the Agreement provides "properties to be acquired for the Reserve have been identified by legal description, tax assessor number, current landowner, and approximate acreage in Tables 3.2  3.6 (pages 29, 31  32, 36  39, 41, and 45) in the HCP." *Id.* at 11.  Doyle alleges that his land was included in the land to be acquired as a part of the reserve and that he agreed to

place his land in the reserve in "exchange for compensation at fair market value, either in case or land exchanges." Complaint, ¶¶ 21 and 26 (Dkt. No. 2). Thus, the Agreement reasonably contemplates the cooperation of private land owners in enabling the County to acquire the necessary reserve lands. The private land owners, however, are not parties to the Agreement and have no contractual obligation to cooperate. Moreover, the County's contractual obligation is to "facilitate" the acquisition of the private lands. The County does not obligate itself to actually "acquire" the lands. Although acquisition of the private lands was necessary to allow the Conservation Plan to become effective, the County made no commitment to acquire the lands. Indeed, the County could not have undertaken such a contractual obligation because any such acquisition would require the consent and agreement of the land owners. Because the acquisition of the lands was contingent upon circumstances beyond the County's control, it obligated itself to "Use its best efforts to ensure that the private . . . lands within the Reserve are acquired and ownership of title or rights are acquired and transferred to the BLM or UDNR as appropriate." Implementation Agreement, at 21 (Dkt. No. 2-1). The very purpose of a "best efforts" clause is to commit a party to undertake all reasonable actions in light of circumstances beyond its control. *Mark Technologies Corp. v. Utah Res. Int'l, Inc.*, 2006 UT App 418, ¶ 7, 147 P.3d 509 ("[A duty to use best efforts] requires a party to make such efforts as are reasonable in light of that party's ability and the means at its disposal and of the other party's justifiable expectations."). A best efforts clause does not assure that the goal will be accomplished. *Id.*

In the Implementation Agreement, the County undertook to use its best efforts for the direct benefit of the other parties to the agreement. The other parties undertook obligations to advance the Conservation Plan with the expectation that the County would take the reasonable

actions required of it as would the other parties to the Agreement. Indeed, Section VII of the Agreement sets out separately the obligations of each party. That these obligations were intended to run only to the other parties of the Agreement is expressly stated: "No persons who are not parties . . . are intended to be deemed third Party beneficiaries . . . and any benefit to anyone not a Party . . . is incidental." Implementation Agreement, at 27 (Dkt. No. 2-1). Under the Agreement, the County had no obligation to acquire the private lands and Doyle had no enforceable right to require the County to acquire his land. It was beyond the County's control of what Doyle would accept as the fair market value for his land. The County undertook to the other contracting parties to use its best efforts to acquire the private lands. If it were successful and Doyle's lands were acquired, he would at best have been an incidental beneficiary of the County's efforts. At its core, this case presents the same issue resolved in *SME Industries*, 2001 UT 54.

In that case, Salt Lake County entered into a contract with TVSA to provide designs, drawings, and specifications for a construction project to expand the Salt Palace Convention Center. The contract provided that TVSA would be assisted by other design professionals. TVSA then entered into contracts with two other firms, the design team, for architectural and structural engineering services. Salt Lake County was not a party to those contracts. The county then entered into a contract with a general contractor for the construction of the project. The general contractor in turn entered into a subcontract with SME to erect the structural steel. Neither the general contractor nor SME contracted directly with any member of the design team. Shortly after the work began, SME encountered problems with the plans and specifications which caused delays and increased costs for the project. The general contractor settled with the county and SME by, among other things, assigning the county's claims against the design team.

SME then sued the design team, asserting among other causes of action, claims as a third-party beneficiary of the county's contract with the design team. The court rejected the claim, finding that SME was not a direct, intended beneficiary of the design contract, but only an incidental beneficiary.

Doyle is no different than the would-be third-parties in *SME* who were relying on the plans and specifications of the consulting engineers and architects. The engineers and architects knew the contractors would use and rely upon their plans. In *SME*, however, the court found that there was no intent to confer a direct benefit on the contractor and that the "contracts were undertaken not for the County's direct benefit, but for the sole benefit of TVSA. At most, the County was merely an incidental beneficiary of the [design team] contracts." *SME Indus.*, 2001 UT 54, ¶ 48. The same conclusion must be reached in this case. The direct benefit of the best efforts clause ran to the other parties to the Agreement. Any benefit to Doyle was merely incidental. Under Utah law and the principles recognized by the other jurisdictions cited herein, an incidental beneficiary has no enforceable right and Doyle lacks standing under Article III.

## CONCLUSION

For the reasons stated, the motion of Washington County to dismiss Doyle's Third Claim for breach of the Implementation Agreement is GRANTED.

SO ORDERED this 9th day of April, 2015.

BY THE COURT:

Clark Waddoups
United States District Judge